The court is now going to call appeal 25-1988 Perez-Castillo v. Bondi. We're going to begin with oral argument on behalf of the appellant Mr. Salah. Good morning, may it please the court. My name is Abdullah Salah. I'm representing Mr. Perez-Castillo. This is an immigration matter. Mr. Castillo has lived in the United States since the age of one, about 38 years or so. He's been living in the United States. He applied for a form of relief that would grant him legal status that's called cancellation of removal. The government sought to disqualify him from that sort of relief by a motion to permit based on a conviction of simple battery. Another issue regarding cancellation of removal that is contested here is whether or not one of the prongs that are necessary to be met is that the respondent's qualifying relative suffer exceptional and extremely unusual hardship if the immigrant here, Mr. Perez, is removed from the United States. I'll address the simple battery issue. The government is trying to state that this is a crime of domestic battery. Illinois has its own domestic battery statute and they could have gone along that route to convict Mr. Perez, but they did not. The person that Mr. Perez was convicted under had two prongs. One of them was bodily harm, but nowhere in that statute does it state that there needs to be a domestic relationship with the victim. I believe that we should not be using a simple battery statute to remove somebody based on a domestic battery when the domestic battery statute exists. That statute could have been used and the reason why it was not used is only known by the prosecutors or the criminal court. They would know best. There's no dispute that this was a domestic battery though, is there? Well, that is the issue, was it or not. The accuser victims were the mother and the siblings, correct? Well, one of the forms of evidence that was used to determine who is the victim here was a police report and we believe that that would be improper to use. Mr. Sal, your client testified under oath that the crime involved his mother, is that right? He did. He testified that the mother was someone that was involved, I believe, but what I am trying to state here is that it should not be based off the memory of the defendant in the criminal case or the respondent in immigration, Mr. Perez, to tell the court who is the victim. The statute should be what guides whether it's a domestic battery or not. If the domestic battery was clear, if it was clear that this is a domestic battery, then I believe that the criminal court would have used the domestic battery statute. Before time gets away from us, the elephant in the room here is the original brief that was filed. It came to the court's attention that a misdemeanor had been created by AI, including AI hallucinations. We brought this to your attention. You filed a document, a response, in which you indicate the brief was drafted by a different attorney, Farah Chalisa. Is it Ms. Chalisa? Yes. She is not present here. We didn't ask for her to be present. We also have a circumstance in which on Friday, I believe you filed a motion, emergency motion, to stay your client's removal, that that's going to be effectuated on February 22nd. Also, I believe last night around 1130 or so, there was a filing of an updated brief, a revised brief. We want to give you an opportunity here, Mr. Sola, to speak to the AI question. Obviously, lawyers' duties to the court include this court. It's on our website. It includes that the lawyers will not knowingly misrepresent, mischaracterize, misquote, or miscite facts or authorities in any written or oral communication to the court. There are both factual as well as legal citation deficiencies and problems here with your original filing. The floor is yours. As you stated, I did not write the brief and a law clerk did not write the brief. It was an attorney. She's in a different firm. She's in a different firm. Did you review the citations before you filed the brief? I did not. Did you review the quotes before you filed the brief? I did not. Did you review the factual representations before you filed the brief? I knew the facts of the case, but as far as doing the research to produce the brief that was submitted, I did not take any part in that. I hired an attorney who was recommended to me that is familiar with the federal courts and the rules of ethics and brief writing. She was recommended as someone who does brief? The client was aware that there would be other attorneys involved. Other attorneys outside of your firm? Yes. And did you split the fee with Ms. Tulisa? She received the fee for her time. She did not split the fee, but there was a fee that she received for her hourly rate. And did your client consent to the fee splitting arrangement? I don't think it was discussed to that detail. Okay. Again, the floor is yours. Anything further you'd like to state on that particular? I have not used AI. I don't know the details of how to use the AI myself. I wasn't aware that it was used. Had I known, I would not have allowed it to be presented. Once it was addressed to me, I addressed it to the attorney, and she responded. And some of her responses to me, I included in my response to the court verbatim. And she corrected that brief, and that was why the brief that was submitted late yesterday was the corrected brief. And she's the author of that brief? Yes. She's the author of the brief you submitted yesterday? Yes. She was informed that AI is not to be used. She said she looked at it and discovered that she used AI for grammatical reasons, not for research, and discovered how those citations were changed in a way that I don't understand, but she was stating that she would be willing to address the court regarding what happened. Just to be clear, I mean, well over half of the citations in the original brief appear to be the product of AI hallucinations. So it's your contention that that was still just a product of a grammar check in the AI? That is her contention. I don't know whether it's accurate. So for example, there are his U.S. citizen children. However, the children are adults. They're of your client's spouse. It appears that, for example, that factual discrepancy wasn't updated or revised in the corrected brief. So the corrected brief, did you review the corrected brief? No, it was given to me late yesterday, and I sent it to the court because I didn't want the incorrect brief to be the brief that we are— So the corrected brief contains specific representations about what is in the record. For example, page 27, the record included school and psychological evaluations evidencing the children's educational and emotional vulnerabilities. Is that remotely correct? Were there any children? Are there any such record materials in this case? I know that Mr. Perez's wife has children. Are they minors in school? I don't know. The record indicates that they're all over the age of 25. Yeah, I believe so.  All right, Mr. Sala, we're going to give you some rebuttal time. Why don't you take a seat at the table? Thank you. Thanks. We're going to now move to Attorney Nardi on behalf of the government. Good morning, Your Honors, and may it please the Court, Anthony Nardi on behalf of the Attorney General. Your Honors, obviously I'm happy to answer any questions the Court has about either the merits of the case or anything addressed in the Court's supplemental argument notice. But if the Court has no questions, I'm happy to rest on our briefs. I have a question. Is it true that the petitioner has been ordered to surrender to ICE for the purposes of removing him from the United States on February 22nd, 2026? Your Honor, I received an email from the local ICE office this morning. They say that they have a – he's scheduled to report in on February 24th, 2026, for the determination of whether or not – what's going on further. I don't believe, based on the representations I've received, that is a scheduled turn in for explicit purposes of removal at that point. But they're going to review the record. Okay. Does the United States oppose the motion to stay his removal? Your Honor, we haven't obviously filed anything yet. We would oppose it on the grounds that the petitioner cannot meet the likelihood of success in the merits under the McKenna standard. In our view, as we say in our brief, he's entirely failed to administratively exhaust the exceptional, extremely unusual hardship issue. And we also believe he's factually incorrect and legally incorrect on the crime of violence issue, both of which are independently dispositive grounds of cancellation of removal. Mr. Nardi, you weren't the author of the brief that attorney has cycled through. You're here. It appears from the government's perspective there was some diligence here. The brief, which again you did not sign, noted factual problems and arguments not supported by the record. But I think it's fair to say that the government's diligence here could have been better. What is your response to a contention that someone responding to a brief such as has been filed on behalf of the petitioner should have noticed the fake citations and fake quotes? Your Honor, I think obviously we acknowledge the proliferation of the use of AI in courts and in briefs all across the country and federal and state courts. However, looking at all of those cases, I think the primary duty that those courts look at is the duty of the filing attorney to not make material misrepresentations of law or fact. And I think the corollary to that requirement, whether you base that either on the local rules, federal rules, the general duty of candor to tribunals, or the professional's responsibility, is that the other side also has to be able to rely on that. And I think especially in the cases here where the primary argument that the government is making is that the two dispositive determinations in this case are, first, the failure to administratively exhaust the exceptional or extremely unusual hardship, and then the forfeiture of any review of that argument, the board's finding for this court. It's not necessary in order to look at all of the subsequent citations. In fact, looking at the duty of diligence, which allows attorneys to make strategic decisions, that could actually be a violation to your client there because you're then undertaking analysis that's not necessary. So no, I don't think there is any obligation where there's these multiple independently dispositive, as we noted to the court, both I think footnotes two through five, to go through and site check the underlying legal citations for these erroneous positions that are not actually relevant to the ultimate determination of the tribunal. Wouldn't it make your brief better to check those cases and find out whether or not they're right? Very effective briefs often turn cases cited by an appellant in the appellee's favor. A hundred percent agree, Your Honor. I think it could make the brief better, but I don't think it's a permanent obligation to do that due diligence or that extra diligence where you've already identified these fatal flaws in the other side's brief. Unless there's anything further, thank you, Mr. Nardi. We appreciate you being here and responding to the court's questions. Thank you. Mr. Slaw, I want you to come forward. We're going to recognize you now for rebuttal. Again, the floor is yours to discuss either the merits of the case or the circumstances involving the AI. Regarding the merits of the case, I believe the issue that was brought up by the government here was that exceptional and extremely unusual hardship was not exhausted at the administrative level. At the Board of Immigration Appeal level, the government submitted information in their brief. They submitted arguments regarding that part of cancellation of removal. They opened it up and we are responding to what they put in their BIA briefs. I believe that we had the right to respond because while we didn't, it's right that we didn't include it in our brief, but they did it on their own. I believe that in this petition for review, we're able to bring up that issue. Related to the AI, I did request additional time to be able to, if I was to get a brief, I would be able to review all of the citations and facts that would be in that brief. That was denied. I was asking the other attorney to provide me with corrections. I received some corrections earlier in the week, but they were not complete. As a result, I insisted that she make all the corrections and submit that to me. I didn't receive it until about 11. Mr. Sal, I take it your client isn't going to have to pay you for that second brief. Is that right? No, there was no additional charge. Like I said earlier, I assume when an attorney puts themselves out there as an attorney that works in the federal system and writes briefs that they're following the rules. I didn't believe that it was on me to redo the brief for someone who's writing briefs who's an attorney. I would understand if it was a law clerk or someone who's not at the attorney level with that experience. You're also not disputing that a brief that's going out over your name, you need to check the citations, check the quotes, check the facts to ensure that under the appropriate federal rules of appellate procedure, that those are all accurate. I understand that. That would also apply for our court's standards of professional conduct, correct? I understand. All right. Thank you, Mr. Slaw. Thank you, Mr. Nardi. The case will be taken under advisement. That will complete the court's hearing this morning.